**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

TROY McRAE,

                                        Plaintiff,

                v.                                              No. 9:17-CV-00146
                                                                (BKS/CFH)
BRIAN FISCHER, Commissioner; D.
STALLONE, Superintendent; HEARING
OFFICER DOE; COUNSELOR DOE; ERIC
SCHNEIDERMAN, Attorney General;
ANTHONY ANNUCCI, Acting Commissioner,

                                        Defendants.

---

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                               **OF COUNSEL:**

Troy McRae
A-046-109-695
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020
Plaintiff pro se

HON. ERIC T. SCHNEIDERMAN                      AIMEE M. PAQUETTE, ESQ.
Attorney General for the                       Assistant Attorney General
State of New York
Syracuse Regional Office
Attorney for the Defendants
615 Erie Blvd. West, Suite 102
Syracuse, New York 13204

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff <u>pro se</u> Troy McRae ("plaintiff"), an inmate who was, at all times relevant hereto, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging that defendants Fischer, Stallone, Hearing Officer Doe, Counselor Doe, Schneiderman, and Annucci violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, and the New York State Constitution. <u>See</u> Dkt. No. 2 ("Compl."). Presently pending is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(5) and 12(b)(6). Dkt. No. 3. Plaintiff submitted a letter to the Court stating he would not be filing a response to the motion. Dkt. No. 5. Defendants submitted a reply. Dkt. No. 6. For the following reasons, it is recommended that defendants' motion to dismiss be granted.

## I. Background

### A. Plaintiff's Recitation of the Facts

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. <u>See</u> subsection II(A) <u>infra</u>. At all relevant times, plaintiff was an inmate at Cayuga Correctional Facility ("Cayuga").

On August 12, 2014, defendants "attempted to convene a Tier III misbehavior hearing for alleged institutional infractions." Compl. at 2. Prior to the hearing, plaintiff's counselor

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

came to his cell and advised him that if plaintiff were to plead guilty to the alleged charges, he could get plaintiff "ninety days (90 days) altogether." Id. Plaintiff refused the offer. Id. at 2-3. At the Tier III hearing, plaintiff objected to the untimeliness of the hearing, as the hearing was held one day after the seven-day extension allotted. Id. at 3. The hearing officer adjourned the meeting to investigate plaintiff's objection further, and ordered plaintiff to return to his cell. Id. Plaintiff was taken to a cell in the Special Housing Unit ("SHU"),[2] rather than released into the general population. Id. Plaintiff remained in SHU for "almost a whole month." Id. While in SHU, plaintiff was denied access to the commissary, telephone calls, visits, recreational exercise, television, work, socialization, religious services, and packages. Id. Eventually, plaintiff was released from SHU and transferred to at Livingston Correction Facility, where he was placed in general population. Id. While at Livingston, plaintiff wrote a letter to the Deputy Superintendent of the Livingston Correctional Facility stating that he had been in the SHU at Cayuga longer than necessary, and that he should be compensated in back pay. Id. In a memorandum dated October 15, 2014, Supervising Offender Rehabilitation Coordinator S. Piecuch determined that plaintiff was owed $7.65 in back pay for the period he spent in SHU at Cayuga while he was "not under any disciplinary sanctions." Dkt. No. 1-2 at 12.

---

[2] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

## II. Discussion[3]

## A. Defendants' Motion to Dismiss under Rule 12(b)(5)

Defendants argue that the complaint should be dismissed under Rule 12(b)(5) because plaintiff failed to comply with federal or New York State requirements for service of process. See Dkt. No. 3-4.

"When a defendant moves to dismiss the complaint under Rules 12(b)(5) and 12(b)(6), the court must address the issue of proper service before the alleged failure to state a claim." Norwood v. Salvatore, 3:12-CV-1025 (MAD/DEP), 2013 WL 1499599, at *2 (N.D.N.Y. Apr. 10, 2013) (citing Schwasnick v. Fields, 08-CV-4759 (JS)(ARL), 2010 WL 2679935, at *2 (E.D.N.Y. June 30, 2010)). In assessing a motion to dismiss under Rule 12(b)(5) for insufficient service of process, a court "must look to matters outside the complaint to determine whether it has jurisdiction." Id. at *2. (citation omitted). The plaintiff bears the burden of establishing that service was sufficient. Ross v. United States, 1:15-CV-01094 (MAD/CFH), 2016 WL 5415771, at *3 (N.D.N.Y. Sept. 28, 2016).

Fed. R. Civ. P. 4(e) provides:

> Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:

---

[3] All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

4

(A) delivering a copy of the summons and of the complaint to the individual personally;
(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e) (spacing added).

In New York State, personal service on state officer sued solely in an official capacity may be made by either (1) personally delivering the summons to the state officer; or (2) mailing the summons by certified mail, return receipt requested to such officer and personally delivering the summons to an assistant attorney general at an office of the attorney general or directly to the attorney general. N.Y. C.P.L.R. § 307. Service is not complete until the summons reaches the principal office of the agency. Id. Additionally, New York requires the front of the envelope to state "URGENT LEGAL MAIL" in capital letters for service to be effective. Id.

In the alternative to the specifications laid out in C.P.L.R. § 307, a summons and complaint may be served on a defendant by first class mail, postage prepaid, along with two copies of a statement of service and acknowledgment of receipt, and a return envelopment, postage prepaid, addressed to the sender. N.Y. C.P.L.R. § 312-a(a). The defendant "must complete the acknowledgment of receipt and mail or deliver one copy of it within thirty (30) days from the date of receipt." Id. § 312-a(b). Service is not complete under § 312-a until the signed acknowledgment is mailed or delivered to the sender. Id.

It is clear that plaintiff failed to abide by any of the service requirements specified

5

above.  By failing to include two copies of the acknowledgment form, as well as a return envelope, postage prepaid, plaintiff's attempt to serve defendant Annucci via first class mail was unsuccessful.  N.Y. C.P.L.R. § 312-a(a).  Further, by sending his complaint via regular mail rather than by certified mail, plaintiff failed to comply with the service requirements detailed in C.P.L.R. § 307 or Fed. R. Civ. P. 4(e).

However, in this Circuit, Rule 4 of the Fed. R. Civ. P. may be construed liberally "to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice."[4] Doe v. Constant, 354 F. App'x. 543, 547 (2d Cir. 2009) (quoting Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972)).  If it appears that proper service still may be obtained, a court may decline to dismiss the action.  Grammenos, 457 F.2d at 1070; Dominelli v. North Country Acad., 1:15-CV-0087 (LEK/CFH), 2016 WL 616375, at *3, 4 (N.D.N.Y. Feb. 16, 2016).

"It is well established that pro se plaintiffs are not excused from complying with procedural rules."  Frezzell v. New York State Dep't of Labor, 1:14-CV-0729 (LEK/ATB), 2016 WL 796063, at *3 (N.D.N.Y. Feb. 24, 2016).  A court, however, is expected to "take appropriate measures to permit the adjudication of pro se claims on the merits, rather than to order their dismissal on technical grounds."  Id. (citation omitted).  Here, the court finds that the defects in service may be easily forgiven with minimal prejudice to the defendants, as they

---

[4] "'Actual notice' is defined as knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.  A notice is regarded in law as 'actual notice' where the person sought to be charged therewith either knows of the existence of the particular fact in question or is conscious of having the means of knowing it even though such means may not be employed by him or her."  58 AM. JUR. 2d Notice § 4.

have actual notice of the action, have appeared in the action, and have received the summons and complaint. See Flemming v. Moulton, 9:13-CV-324 (MAD/RFT), 2015 WL 5147035, at *6 (N.D.N.Y. Sept. 1, 2015) (quoting McGann v. State of New York, 77 F.3d 672, 674 (2d Cir. 1996) ("Above all, strong factors of justice and equity push toward reading Rule 4(c) as providing for effective mail service where, as here, the recipient actually receives the mail service but refuses to acknowledge it properly.")). Further, defendants' argument that plaintiff failed to effectuate service to the other named defendants falls short, as all defendants have appeared in the case. See id.

Moreover, plaintiff commenced this action in state court, and, upon application, plaintiff was awarded poor person status. Dkt. 3-2 at 2. Defendants removed this action from the Supreme Court of the State of New York, County of Cayuga to this court. Dkt. No. 1. Plaintiff paid this Court's filing fee upon transfer. Id. It is of note that the Supreme Court Order granting Poor Person Relief states, "Plaintiff's application for permission to affect personal service upon Defendants by regular first class mail is granted." Dkt. No. 3-2 at 3. The undersigned speculates that such statement, although not binding on this Court, may have caused plaintiff additional confusion regarding this Court's service requirements, as it may have lead plaintiff to believe that he could properly serve defendants by regular mail. See id. The undersigned is particularly mindful of the special solicitude afforded to pro se plaintiffs, discussed infra. See Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.") (internal

7

citations omitted).

On balance, consideration of plaintiff's pro se status and the fact that defendants will suffer no real prejudice leads the undersigned to recommend that defendants' motion to dismiss due to improper service be denied.

### B. Defendants' Motion to Dismiss under Rule 12(b)(6)

Under Fed. R. Civ. P. 12 (b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d

8

Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted).  Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff, 537 F.3d at 191-92 ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.") (internal citations omitted).

### 1. Personal Involvement

Defendants Fischer, Annucci, Schneiderman, Stallone, Officer Doe, and Counselor Doe argue that plaintiff has failed to demonstrate their personal involvement.  See Dkt. No. 3-

9

4.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted)).[5] Assertions of personal involvement that are

---

[5] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision has affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio

merely speculative are insufficient to establish a triable issue of fact. See, e.g., Brown v. Artus, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009). Defendants contend that they were not personally involved in the alleged constitutional violations.

### a. Fischer, Schneiderman, Annucci, and Stallone

Plaintiff contends that he "wrote the superintendent, the sergeants, and the [unintelligible] commissioner as to why he was still in the SHU after prevailing at the hearing?" Compl. at 3. Plaintiff does not attach any correspondence in support of his allegation. Defendants argue that plaintiff failed to demonstrate that defendants Fischer, Annucci, Schneiderman, or Stallone were personally involved in the alleged constitutional violations. Dkt. No. 3-4 at 12. Nowhere in his complaint does plaintiff mention what role defendant Schneiderman played in the alleged events that would give rise to any personal involvement in the action, nor does plaintiff even demonstrate that he contacted Schneiderman.

Construing plaintiff's allegations liberally, he is contending that defendants Fischer, Annucci, and Stallone, after being informed of alleged constitutional violations, failed to remedy the wrong, which falls under the second Colon factor. See Compl. at 8; Colon, 58 F.3d at 873. The Second Circuit has held that, at the initial pleading stage, an inmate's complaint may survive a motion to dismiss based on a defendant's lack of personal involvement if the inmate's complaint "contain[s] factual allegations indicating that the [l]etter was sent to the [official] at an appropriate address and by appropriate means—that the

_____

v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

[official] in fact received the [l]etter, read it, and thereby became aware of the alleged conditions by which [the inmate] complained." Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013). Plaintiff's conclusory statement that he sent defendants letters, unsupported by any details of when he sent the letters, where he sent the letters, what the letters contained, or whether defendants Fischer, Annucci, and Stallone actually received the letters, is insufficient to survive defendants' motion to dismiss against these defendants based on lack of personal involvement. See id.; cf. Ferrer v. Fischer, 9:13-CV-0031 (NAM/ATB), 2014 WL 1763383, at *3 (N.D.N.Y. May 1, 2014) ("Plaintiff's allegations regarding Commissioner Fischer are limited, but he does allege that he sent multiple letters to defendant Fischer, that defendant Fischer was fully aware of his situation, and that defendant Fischer failed to respond to the letters or otherwise take appropriate action."). Plaintiff may not name and attempt to hold liable these individuals merely because they hold positions of authority within the prison system without substantiating claims against them. See Colon, 58 F.3d at 874 ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain Colon's claim.").

Accordingly, it is recommended that defendants' motion on this ground be granted, and that all claims against defendants Fischer, Schneiderman, Annucci, and Stallone be dismissed without prejudice for lack of personal involvement. See Melendez v. Schneiderman, 9:13-CV-622 (GLS/ATB), 2014 WL 2154536, at *8-9 (N.D.N.Y. May 22, 2014) (dismissing claim against the attorney general for lack of personal involvement); Roache v. Attorney General's Office, 12-CV-1034 (LEK/DEP), 2013 WL 5503151, at *12-13 (N.D.N.Y.

12

Sept. 30, 2013) (same).

### b. Hearing Officer Doe and Counselor Doe

Plaintiff does not raise any specific allegations that defendants Hearing Officer Doe and Counselor Doe directly participated in any alleged constitutional violations. To the extent that plaintiff's complaint may be interpreted under the fifth Colon factor, deliberate indifference, plaintiff has failed to state a claim that Hearing Officer Doe or Counselor Doe exhibited "deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon, 58 F.3d at 873. Plaintiff makes no allegation that either Hearing Officer Doe or Counselor Doe possessed a duty to monitor the length of time that plaintiff was kept in SHU or that they otherwise had control over his SHU placement. See generally Felix-Torres v. Graham, 687 F. Supp. 2d 38, 52 (N.D.N.Y. 2009) ("[E]ven if the Court were to find that some admissible record evidence exists that Defendant Ryerson had a supervisory role in assisting qualified inmates in obtaining lower bunk assignments, the Court can find no admissible record evidence that Defendant Ryerson, as a supervisor, was personally involved in the constitutional violations alleged."). Further, to the extent that plaintiff's complaint can be read to allege violations under the First, Eighth and Fourteenth Amendments, plaintiff fails to argue that either Hearing Officer Doe or Counselor Doe retaliated against plaintiff for his exercised of protected speech by taking adverse action in violation of the First Amendment, subjected plaintiff to confinement that was sufficiently serious in violation of the Eighth Amendment, or deprived plaintiff of a liberty interest in violation of the

Fourteenth Amendment. U.S. Const. amends. I, VIII, and XIV. Thus, plaintiff fails to demonstrate Hearing Officer Doe and Counselor Doe's personal involvement in these alleged constitutional violations.

Accordingly, it is recommended that defendants' motion be granted on this ground, and that all claims against defendants Hearing Officer Doe and Counselor Doe be dismissed without prejudice for lack of personal involvement.

## 2. Confinement in SHU

In the alternative to dismissal based on Hearing Officer Doe and Counselor Doe's lack of personal involvement, the undersigned addresses below plaintiff's claims against these defendants on the merits. Plaintiff contends that he was unlawfully kept in the SHU for almost a month without access to the commissary, telephone calls, visits, recreational exercise, television, work, socialization, religious services, and packages in violation of his rights under the New York State Constitution and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. Compl. at 3, 4. Defendants argue that plaintiff "fails to allege with particularity what his claims are" under federal and state law. Dkt. No. 3-4.

### a. First Amendment Retaliation

To the extent that plaintiff's complaint may be read as alleging a First Amendment retaliation claim, plaintiff contends that prior to his Tier III hearing, Counselor Doe asked plaintiff if he wanted to plead guilty to the charges in exchange for receiving ninety days in

14

SHU. Compl. at 2. Plaintiff refused, and when he was taken to the hearing, Hearing Officer Doe stated "time extension" on the record. Id. at 2-3. Plaintiff then objected to the hearing on the grounds that the hearing was untimely, and thereafter, he was placed in SHU. Id. at 3.

Courts are to "approach [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]'" See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, NA, 534 U.S. 506 (2002)). A retaliation claim under section 1983 may not be conclusory and must have some basis in specific facts that are not inherently implausible on their face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); South Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). If the plaintiff meets this burden, the defendants must show, by a preponderance of the evidence, that they would have taken the adverse action against the plaintiff "even in the absence of the protected conduct." Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

Plaintiff fails to provide facts plausibly suggesting that he was subjected to retaliation by defendants. There is no allegation that either plaintiff's failure to accept Counselor Doe's

alleged offer, or plaintiff's objection to the untimeliness of the Tier III hearing constituted protected speech or conduct. See Espinal, 558 F.3d at 128. However, assuming that plaintiff is referring to one or both of these actions, and that these amount to protected speech, plaintiff also failed to plausibly demonstrate how defendants Counselor Doe and Hearing Officer Doe took adverse action against him. To the extent he may suggest that the adverse action is that defendants placed him in SHU in retaliation for these actions or some other unspecified speech or conduct, the undersigned has already determined that plaintiff failed to demonstrate Counselor Doe and Hearing Officer Doe's personal involvement in his SHU placement. See supra III.B.1.b. However, even if the first two prongs of the test were met, the complaint is void of any allegation of a causal connection between plaintiff's actions and his confinement and loss of privileges in SHU. Plaintiff fails to plausibly allege that his assumed protected conduct was a "substantial or motivating factor in [Hearing Officer Doe and Counselor Doe's] decision to take action against plaintiff." Vega v. Artus, 610 F. Supp 2d 185, 207 (N.D.N.Y. 2009) (citation and internal quotation marks omitted).

Therefore, it is recommended that defendants' motion be granted on this ground.


### b. Eighth Amendment

To the extent that plaintiff's complaint can be construed as alleging a claim of inadequate prison conditions under the Eighth Amendment, plaintiff contends that he was unlawfully kept in SHU without access to commissary, telephone calls, visits, recreational exercise, television, work, socialization, and religious services. Compl. at 3.

16

"The Eighth Amendment protects prisoners from 'cruel and unusual punishment' in the form of 'unnecessary and wanton infliction of pain' at the hands of prison officials and conduct that offends 'evolving standards of decency.'" Roseboro v. Gillespie, 791 F. Supp. 2d 353, 381 (S.D.N.Y. 2011) (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)). To succeed on a claim of inadequate prison conditions under the Eighth Amendment, the plaintiff must allege: "(1) that the conditions of his confinement resulted in deprivation that was sufficiently serious; and (2) that the defendant acted with deliberate indifference to the plaintiff's health or safety." Cusamano v. Sobek, 604 F. Supp. 2d 416, 487 (N.D.N.Y. 2009) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Under the first prong, plaintiff must establish that the "conditions of his confinement resulted in 'unquestioned and serious deprivations of basic human needs' or 'deprive[d] inmates of the minimal civilized measures of life's necessities.'" Cusamano, 604 F. Supp. 2d. at 487 (quoting Davidson v. Murray, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005)).

Here, plaintiff's complaint fails to raise facts plausibly suggesting that he was subjected by defendants to conditions that were sufficiently serious for the purposes of the Eighth Amendment. The loss of privileges plaintiff alleges does not amount to a "serious deprivation of basic human needs." Roseboro, 791 F. Supp. 2d at 381 (holding that ninety-day loss of visitation, phone and commissary privileges in SHU not severe enough to warrant cruel and unusual punishment under the Eighth Amendment); Pilgrim v. Artus, 9:07-CV-1001 (GLS/RFT), 2010 WL 3724883, at *9 (N.D.N.Y. Mar. 18, 2010) (holding that plaintiff's denial of various privileges while "serving three thirty (30) day and one forty-five (45) day periods in keeplock" failed to reach the level of severity associated with cruel and unusual punishment

17

under the Eighth Amendment).  Additionally, plaintiff fails to allege any facts to suggest that defendants acted with deliberate indifference for plaintiff's health or safety.  Accordingly, it is recommended that defendants' motion be granted on this ground.

### c. Fourteenth Amendment

To the extent that plaintiff's complaint may allege a violation of his due process rights under the Fourteenth Amendment, plaintiff's complaint arguably alleges that (1) defendants' commencement of an "otherwise untimely Tier III commissioner's hearing, knowing that it was untimely, was contrary to their Departmental directives . . . [and] malicious under the . . . Fourteenth Amendment"; and (2) his confinement in SHU for nearly a month without access to various privileges was "contrary to Departmental directives . . . thus constituting a violation of his rights under the . . . Fourteenth Amendment."  See Compl. at 3-4.

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV § 1.  To succeed on a due process claim, "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation marks omitted).

### i. Liberty Interest

An inmate has a protected liberty interest in being free from segregated confinement but only where the alleged deprivation imposed the requisite atypical and significant hardship.

18

See Sandin v. Connor, 515 U.S. 472, 483-84 (1995). "To determine whether a liberty interest exists under state law, the court must analyze whether the restraint at issue 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Giano, 238 F.3d at 225 (quoting Sandin, 515 U.S. at 484); see Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (quoting Sandin, 515 U.S. at 484); see Jenkins, 179 F.3d at 28 (quoting Sandin, 515 U.S. at 486) ("Although there is no bright-line rule regarding the length or type of sanction that would give rise to an 'atypical and significant hardship,' this standard will not be met unless the disciplinary and administrative sanctions are onerous.").

Plaintiff alleges he was kept in SHU for "almost a whole month." Compl. at 3. Liberally reading the complaint, it appears plaintiff is alleging that his one-month stay in SHU, despite the fact that he was never found guilty of the disciplinary charges,[6] amounts to a violation of his Fourteenth Amendment right to due process. However, plaintiff was held only for thirty days, and such a short duration of confinement does not amount to an "atypical and significant

---

[6] Plaintiff's complaint does not state the disposition of his disciplinary hearing. However, plaintiff alleges he received compensation from Supervising Offender Rehabilitation Coordinator S. Piecuch for this period in SHU. Dkt. No. 1-2 at 12. Giving plaintiff special solicitude, the undersigned assumes for purposes of this motion, that plaintiff is alleging that he was never found guilty or that the charges were dropped or reversed.

19

hardship." See Reynoso v. Selsky, 292 F. App'x 120, 122-23 (2d Cir. 2008) (summary order) (internal citations omitted) ("We have previously held that 305 days of confinement under normal segregated housing unit conditions met the Sandin standard for atypicality and that a 101-day aggregated confinement in a highly-restrictive segregated housing of a New York correctional facility, without more, was not an atypical confinement."); Borcsok v. Early, 299 F. App'x 76, 78 (2d Cir. 2008) (summary order) ("Even if we include the eleven days that Borcsok spent in the SHU before the disciplinary hearing with the ninety days he received as part of his penalty, the duration of his confinement was neither atypical nor significant."); Jackson v. Onondaga County, 549 F. Supp. 2d 204, 218 (N.D.N.Y. 2008) (dismissing the plaintiff's procedural due process claim where the plaintiff alleged he was confined to SHU for 49 days). Thus, the length of plaintiff's SHU confinement alone does not set forth a constitutional violation.

Moreover, plaintiff fails to allege facts plausibly suggesting he experienced conditions of confinement other than those normally associated with SHU confinement. It is well-settled that "[i]nmates may be placed in SHU as a result of a disciplinary hearing, for administrative reasons, for protective custody, for keeplock confinement, or for any other reason. All inmates placed in SHU experience essentially the same basic conditions of confinement." Warren v. Irvin, 985 F. Supp. 350, 354 (W.D.N.Y. 1997). Although the conditions of the SHU confinement plaintiff faced may have been less than ideal, plaintiff "has not demonstrated that he was subject to conditions that were so atypical when compared to ordinary prison life as to give rise to a protected liberty interest." Burns v. Martuscelllo, 9:13-CV-0486 (LEK/CFH), 2015 WL

541293, at *15 (N.D.N.Y. Feb. 10, 2015). Plaintiff's allegations that he was denied access to the commissary, telephone calls, visits, recreational exercise, television, work, socialization, religious services, and packages do not implicate a liberty interest under the Fourteenth Amendment. See Compl. at 3. It is well-settled that "[t]he temporary loss of the various privileges alleged in this case—e.g., telephone, package, commissary, earphone, movie, television, and third-shower—does not represent the type of deprivation which could reasonably be viewed as imposing atypical and significant hardship on an inmate." Warren, 985 F. Supp. at 353.

Thus, plaintiff has failed to demonstrate that he had a protected liberty interest in being free from SHU confinement. Accordingly, it is recommended that defendants' motion be granted on this ground.

### ii. Procedural Due Process

Even assuming plaintiff had a protected liberty interest at stake, plaintiff's complaint fails to plausibly suggest that he was denied due process protections. Once a plaintiff demonstrates that he has a liberty interest at stake, a court is to determine whether the inmate was afforded the minimum due process requirements. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Arce v. Walker, 139 F.3d 329, 335 (2d Cir. 1998) (holding that an inmate is entitled to minimal due process protections when being involuntary placed in administrative confinement).

> Where disciplinary hearings could result in SHU confinement or
> loss of good time credit, [i]nmates are entitled to advance written

> notice of the charges; a fair and impartial hearing officer; a
> reasonable opportunity to call witnesses and present
> documentary evidence; and a written statement of the
> disposition, including supporting facts and reasons for the action
> taken.

McAllister v. Call,  9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at * 11 (N.D.N.Y. Oct. 29,

2014) (internal quotation marks omitted).

Plaintiff's complaint does not specifically allege any procedural deprivations. Nowhere

in plaintiff's complaint does he contend that he was denied notice, a fair and impartial hearing

judge, an opportunity to call witnesses and present evidence, or a written statement of

deposition that would give rise to a procedural due process claim. See id. The only indication

of a procedural due process violation claim that can be gleaned from plaintiff's submission is

his contention that his Tier III Disciplinary Hearing was not commenced within the requisite

seven-day time period.  Compl. at 2, 4; 7 N.Y.C.R.R. 251-5.1.  Courts within this Circuit have

determined that a violation of this regulation, without more, is not enough to demonstrate a

viable federal constitutional claim. Dizak v. Hawkins, 9:15-CV-1171 (LEK/TWD), 2016 WL

632250, at *4 (N.D.N.Y. Feb. 17, 2016) (citing Soto v. Walker, 44 F.3d 169, 173 (2d Cir.

1995)); see Waters v. Melendez,15-CV-805 (TJM/CFH), 2017 WL 980656, at *5 (N.D.N.Y.

Jan. 31, 2017) (internal citations and quotation marks omitted) ("Defendants are correct,

insofar as [d]ue process for an inmate disciplinary hearing does not encompass a right to a

speedy hearing.  The Second Circuit has held that the lack of a speedy hearing alone would

not be enough generally to establish a constitutional claim.").  As plaintiff fails to demonstrate

insufficient process based on his disciplinary hearing, he has not sufficiently set forth a

violation of his due process rights under the Fourteenth Amendment.

Accordingly, it is recommended that defendants' motion be granted on this ground.[7]

## III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED,** that defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5) (Dkt. No. 3) be **DENIED**; and it is further

**RECOMMENDED,** that defendants' Motion to Dismiss, insofar as it seeks dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 3) be **GRANTED**; and it is further

**RECOMMENDED,** that plaintiff Troy McRae's complaint (Dkt. No. 2) be **DISMISSED** in its entirety, without prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d

---

[7] In their third argument, defendants contend that it is unclear from the complaint whether plaintiff exhausted all administrative remedies prior to commencing this action. Dkt. No. 3-4 at 20. In the event the Court declines to dismiss plaintiff's complaint, defendants request limited discovery in order to determine whether plaintiff exhausted his administrative remedies under the PLRA. Id. Since the undersigned is recommending dismissal of the action, the undersigned declines to reach this request.

15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED**.

Dated: July 13, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

24