**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

TROY MCRAE,

                               Plaintiff,

        v.                                    No. 9:17-CV-0146
                                               (BKS/CFH)

BRIAN FISCHER, Commissioner; D.
STALLONE, Superintendent; HEARING
OFFICER DOE; COUNSELOR DOE; ERIC
SCHNEIDERMAN, Attorney General;
ANTHONY ANNUCCI, Acting Commissioner;
et al.,

                               Defendants.

---

**APPEARANCES:**                               **OF COUNSEL:**

TROY MCRAE
A-046-109-695
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020
Plaintiff pro se

Attorney General for the                  AIMEE M. PACQUETTE, ESQ.[1]
State of New York                          Assistant Attorney General
Attorney for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2465

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

    Plaintiff Troy McRae ("McRae"), an inmate who was, at all relevant times, in the custody

---

      [1]      Defendants' counsel signs her submissions as Aimee Paquette, Esq., although her name is listed on the Court's electronic filing system, CM/ECF as Aimee Cowan, Esq.

      [2]      This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

of the New York Department of Corrections and Community Supervision ("DOCCS"), brings

this action pursuant to 42 U.S.C. § 1983.  Dkt. No. 9 ("Am. Compl.").  McRae contends that

Defendants Commissioner Brian Fischer ("Fischer"), Superintendent D. Stallone

("Stallone"), Hearing Officer Doe ("H.O. Doe"), Tier Assistant Doe ("T.A. Doe"), and Acting

Commissioner Anthony Annucci ("Annucci") deprived him of his civil rights.  See id.


## I.  BACKGROUND

### A.  Procedural History

In December 2016, McRae commenced this action with the filing of a pro se civil

rights complaint in New York State Supreme Court, Cayuga County.  Dkt. No. 2.  On

February 9, 2017, Defendants filed a Notice of Removal.  Dkt. No. 1.  On February 17,

2017, Defendants moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

12(b)(5) and 12(b)(6), to dismiss the Complaint.  Dkt. No. 3.  McRae filed a letter indicating

that he would not respond to the motion.  Dkt. No. 4.  In a Report-Recommendation and

Order filed on July 14, 2017 (the "July Order"), the undersigned recommended granting

Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 7.  On August

16, 2017, the Report-Recommendation and Order was adopted in its entirety.  Dkt. No. 8.

McRae was afforded the opportunity to amend the Complaint within thirty days.  Id. at 2-3.[3]

On August 23, 2017, McRae filed an Amended Complaint.[4]  Dkt. No. 9.  In lieu of an

---

[3]     Throughout this Report-Recommendation and Order, references to page numbers in items
that appear on the docket refer to the pagination of the header numbers generated by CM/ECF, not to the
page numbers used by the parties in the individual documents.

[4]     In the Amended Complaint, McRae replaced defendant Counselor Doe with "Tier Assistant
Doe."  The Amended Complaint does not contain any claim against former New York State Attorney General
Eric Schneiderman.

answer, Defendants filed a Motion to Dsmiss the Amended Complaint.  Dkt. No. 10.

McRae opposed the motion.  Dkt. No. 14.   Defendants filed a reply.  Dkt. No. 15.

### B.  Facts

The facts are related herein in the light most favorable to McRae as the non-moving

party.  See subsection II(A) infra.  At the relevant time, McRae was confined at Cayuga

Correctional Facility ("Cayuga C.F.").  See Am. Compl., generally.

On August 12, 2014, T.A. Doe and H.O. Doe "attempted to convene a Tier III

misbehavior hearing for alleged institutional infractions."  Am. Compl. at 2.  Prior to the

hearing, T.A. Doe came to McRae's cell and advised McRae that if he pleaded guilty to the

charges, he could get McRae "ninety days (90 days) altogether [sic]."  Id.  McRae refused

the offer.  Id.

At the Tier III hearing, McRae objected to the untimeliness of the hearing, as the

hearing was held one day after the seven-day extension allotted.  Am. Compl. at 2.  H.O.

Doe adjourned the hearing to investigate McRae's objection.  Id.  When H.O. Doe returned,

he "packed up everything" and ordered McRae to return to his cell in the Special Housing

Unit ("SHU"), rather than to the general population.[5]  Id. at 3.  McRae remained in SHU for

"almost a whole month."  Id.  While in SHU, McRae was denied access to the commissary,

telephone calls, visits, recreational exercise, television, work, socialization, religious

services, and packages.  Am. Compl. at 3.  McRae wrote to Stallone, Fischer, and Annucci

claiming that he was unlawfully confined in the SHU after the disciplinary hearing was

---

[5]    The date that H.O. Doe returned is not set forth in the Amended Complaint.

dismissed.  Id.

Eventually, McRae was released from SHU and transferred to at Livingston Correction Facility, where he was placed in general population.  Am. Compl. at 3.  While at Livingston, McRae wrote a letter to the Deputy Superintendent of the Livingston Correctional Facility stating that he had been in the SHU at Cayuga C.F. longer than necessary, and that he should be compensated in back pay.  Id.  In a memorandum dated October 15, 2014, Supervising Offender Rehabilitation Coordinator S. Piecuch determined that McRae was owed $7.65 in back pay for the period he spent in SHU at Cayuga while he was "not under any disciplinary sanctions."  Dkt. No. 1-2 at 12.[6]  In his amended complaint, McRae seeks declaratory and monetary relief.  See Am. Compl. at 5-6.

## II.  DISCUSSION[7]

McRae alleges that: (1) his conditions of confinement in the SHU violated his Eighth Amendment rights; (2) Defendants violated his Fourteenth Amendment right to Due Process; (3) Defendants conspired to deprive him of his constitutional rights; and (4) Defendants violated the New York State Constitution and various state laws.  See Am.

---

[6]    The original Complaint included exhibits.  Dkt. No. 1-2 at 12-13.  McRae incorporated by reference the same exhibits attached to the original Complaint, but failed to actually attach the exhibits to the Amended Complaint.  See Am. Compl. at 3.  "Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint."  Wellington v. Langendorf, No. 12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *3 (N.D.N.Y. July 15, 2013).  To require McRae to file an Amended Complaint that includes the original exhibits is, "an unnecessary procedural hoop that would waste resources and delay resolution of this action." Alexander v. U.S., No. 13-CV-678, 2013 WL 4014539, at *4 (N.D.Cal. Aug. 5, 2013).  Because McRae is a pro se plaintiff, the Court will consider the exhibits and documentation attached to the original Complaint as if they were properly incorporated by reference in the Amended Complaint.

[7]    All unpublished opinions cited to by the Court in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Compl., generally.  Defendants move to dismiss the Amended Complaint arguing that:

(1) McRae's Eighth and Fourteenth Amendment claims fail to state a cause of action; and

(2) Stallone, Fischer, and Annucci were not personally involved in any alleged constitutional

violations.  See Dkt. No. 10, generally.

## A.  Legal Standard

When considering a motion to dismiss, "a court must accept the allegations contained

in the complaint as true, and draw all reasonable inferences in favor of the non-movant."

Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is

inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)

(holding that "entitle[ment] to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to

accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must

include "facial plausibility . . . that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550

U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement

. . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence of illegal [conduct] ."));  see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009)

(holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief

that is plausible . . .") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted).  While a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law[.]

Triestman, 470 F.3d at 477 (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.") (internal citations omitted).

### B. Claims Against Tier Assistant Doe and Hearing Officer Doe

### 1. Conditions of Confinement

The law related to Eighth Amendment conditions-of-confinement claims was discussed in the July Order and will not be restated herein.  Dkt. No. 7 at 16-17.  In the Complaint, McRae claimed that he was unlawfully kept in SHU without access to commissary, telephone calls, visits, recreational exercise, television, work, socialization, and religious services. Compl. at 3.  In the July Order, the Court held that McRae failed to plead that the conditions of his confinement met the objective prong of an Eighth Amendment claim:

> Here, plaintiff's complaint fails to raise facts plausibly suggesting that he was subjected by defendants to conditions that were sufficiently serious for the purposes of the Eighth Amendment.  The loss of privileges plaintiff alleges does not amount to a "serious deprivation of basic human needs." Roseboro, 791 F. Supp. 2d at 381 (holding that ninety-day loss of visitation, phone and commissary privileges in SHU not severe enough to warrant cruel and unusual punishment under the Eighth Amendment); Pilgrim v. Artus, 9:07-CV-1001 (GLS/RFT), 2010 WL 3724883, at *9 (N.D.N.Y. Mar. 18, 2010)[8] (holding that plaintiff's denial of various privileges while "serving three thirty (30) day and one forty-five (45) day periods in keeplock" failed to reach the level of severity associated with cruel and unusual punishment under the Eighth Amendment).  Additionally, plaintiff fails to allege any facts to suggest that defendants acted with deliberate indifference for plaintiff's health or safety.

Dkt. No. 7 at 17-18.

With respect to the subjective element, the Court noted, "[p]laintiff makes no allegation that either Hearing Officer Doe or Counselor Doe possessed a duty to monitor the length of time that plaintiff was kept in SHU or that they otherwise had control over his SHU

---

[8]   This unpublished decision will not be provided to plaintiff, as the Court provided plaintiff copies of this unpublished decision at the time it issued its Report-Recommendation and Order.  Dkt. No. 7.

placement." Dkt. No. 7 at 13.

Despite being afforded the opportunity to amend the Complaint, McRae has failed to plead facts to cure the deficiencies in the prior pleading in this regard. For the reasons set forth in the July Order, it is recommended that McRae's Eighth Amendment claims be dismissed.

### 2. Due Process

Defendants argue that the Amended Complaint reiterates conclusory allegations related to Due Process and thus, the claims are subject to dismissal. Dkt. No. 10-1 at 12-16. The law pertaining to Fourteenth Amendment Due Process claims was discussed in the July Order and will not be restated herein. Dkt. No. 7 at 18-23.

### a. Liberty Interest

In the original Complaint, McRae claimed that he was illegally confined to the SHU beyond the date that charges against him were dismissed. Compl. at 3. McRae alleged that he was confined "for almost a month" and denied access to the commissary, telephone calls, visits, recreational exercise, television, socialization, religious services, and packages. Id. In the July Order, the Court dismissed the due process claims because McRae failed to plead that he suffered a deprivation of a protected liberty interest. Dkt. No. 7 at 19. The Court concluded, "plaintiff was held only for thirty days, and such a short duration of confinement does not amount to an 'atypical and significant hardship.'" Id. at 19-20. Additionally, with respect to the temporary loss of privileges, the Court noted that McRae "fail[ed] to allege facts plausibly suggesting he experienced conditions of confinement other

8

than those normally associated with SHU confinement." Id. at 20-21.

In the Amended Complaint, McRae reiterates the facts concerning his SHU sentence

and confinement, without any further allegations or information. See Am. Compl. at 3. For

the reasons set forth in the July Order, McRae has failed to plead that his SHU confinement

was atypical when compared with ordinary prison life.

### b.  Procedural Due Process

In the July Order, the Court noted that even assuming that McRae plead a protected

liberty interest, the Complaint did not include facts related to how Defendants violated the

procedural process requirements of the Fourteenth Amendment.  Dkt. No. 7 at 22-23.  The

Court reasoned:

> Plaintiff's complaint does not specifically allege any
> procedural deprivations.  Nowhere in plaintiff's complaint does
> he contend that he was denied notice, a fair and impartial
> hearing judge, an opportunity to call witnesses and present
> evidence, or a written statement of deposition that would give
> rise to a procedural due process claim.  See id. The only
> indication of a procedural due process violation claim that can
> be gleaned from plaintiff's submission is his contention that
> his Tier III Disciplinary Hearing was not commenced within the
> requisite seven-day time period.  Compl. at 2, 4; 7 N.Y.C.R.R.
> 251-5.1. Courts within this Circuit have determined that a
> violation of this regulation, without more, is not enough to
> demonstrate a viable federal constitutional claim. Dizak v.
> Hawkins, 9:15-CV-1171 (LEK/TWD), 2016 WL 632250, at *4
> (N.D.N.Y. Feb. 17, 2016) (citing Soto v. Walker, 44 F.3d 169,
> 173 (2d Cir. 1995)); see Waters v. Melendez, 15-CV-805
> (TJM/CFH), 2017 WL 980656, at *5 (N.D.N.Y. Jan. 31, 2017)
> (internal citations and quotation marks omitted) ("Defendants
> are correct, insofar as [d]ue process for an inmate disciplinary
> hearing does not encompass a right to a speedy hearing. The
> Second Circuit has held that the lack of a speedy hearing
> alone would not be enough generally to establish a

constitutional claim.").[9]

Id. at 22-23.

In the Amended Complaint, McRae repeats the allegations related to the timing of the disciplinary hearing.  Despite being afforded the opportunity to amend the Complaint, McRae has failed to demonstrate insufficient process based upon the delay in conducting his disciplinary hearing.

Construing the Amended Complaint liberally, McRae also claims that T.A. Doe provided inadequate employee assistance prior to the disciplinary hearing.  See Am. Compl. at 2.  "An inmate's right to assistance with his disciplinary hearing is limited."  Neree v. O'Hara, No. 09-CV-802 (MAD/ATB), 2011 WL 3841551, at *13 (N.D.N.Y. July 20, 2011) (Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993)).  This Circuit has held that an assistant is constitutionally necessary when the plaintiff is confined in SHU and unable to marshal evidence and present a defense.  Id. (citation omitted).  In such a case, the assistant need only perform what the plaintiff would have done, but is not required to go beyond the inmate's instructions.  See Lewis v. Johnson, No. 08-CV-482 (TJM/ATB), 2010 WL 3785771, at *10 (N.D.N.Y. Aug. 5.2010) (citing Silva, 992 F.2d at 22).  Furthermore, "any violations of this qualified right are reviewed for 'harmless error.'"  Clyde v. Schoellkopf, 714 F. Supp.2d 432, 437 (W.D.N.Y.2010) (citing Pilgrim v. Luther, 571 F.3d 201, 206 (2d Cir. 2009)).

McRae claims that T.A. Doe came to his cell and advised that he "could get plaintiff ninety days altogether [sic]" if he pleaded guilty to the charges.  Am. Compl. at 2.  Taking

---

[9]  These unpublished decisions will not be provided to plaintiff, as the Court provided plaintiff copies of these unpublished decisions at the time it issued its Report-Recommendation and Order.  Dkt. No. 7.

McRae's version of events as true, even if T.A. Doe urged him to plead guilty, McRae does not contend that he was somehow prejudiced as a result of T.A. Doe's act, and does not show that he was unable to present a defense or that the outcome of the hearing would have been different had T.A. Doe not made such statements.  See Clark v. Dannheim, 590 F. Supp.2d 426, 429-31 (W.D.N.Y. 2008) ("To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing.") (citation omitted)).  Therefore, any shortcomings in the assistance rendered by T.A. Doe was harmless error and does not rise to the level of a Due Process violation.

For the reasons set forth herein and in the July Order, it is recommended that McRae's Fourteenth Amendment Due Process claims be dismissed.

## C.  Claims Against Fischer, Stallone, and Annucci

McRae claims that Fischer, Stallone, and Annucci were aware of the outcome of the disciplinary hearing and his confinement in the SHU beyond the date of the hearing.  See Dkt. No. 14 at 1.  Defendants argue that McRae's claims are subject to dismissal because McRae failed to demonstrate personal involvement.  Dkt. No. 10-1 at 8-11.

The law pertaining to personal involvement in § 1983 actions was discussed in the July Order and will not be restated herein.  Dkt. No. 7 at 9-11.  In the original Complaint, Plaintiff alleged that he wrote to Defendants complaining about his unlawful confinement.  See Compl. at 3.  In the July Order, the Court noted, "[p]laintiff does not attach any correspondence in support of his allegation."  Dkt. No. 7 at 11.  The Court dismissed McRae's claims against Fischer, Stallone, and Annucci holding:

11

> Plaintiff's conclusory statement that he sent defendants letters, unsupported by any details of when he sent the letters, where he sent the letters, what the letters contained, or whether defendants Fischer, Annucci, and Stallone actually received the letters, is insufficient to survive defendants' motion to dismiss against these defendants based on lack of personal involvement. See id.; cf. Ferrer v. Fischer, 9:13-CV-0031 (NAM/ATB), 2014 WL 1763383, at *3 (N.D.N.Y. May 1, 2014)[10] ("Plaintiff's allegations regarding Commissioner Fischer are limited, but he does allege that he sent multiple letters to defendant Fischer, that defendant Fischer was fully aware of his situation, and that defendant Fischer failed to respond to the letters or otherwise take appropriate action.").  Plaintiff may not name and attempt to hold liable these individuals merely because they hold positions of authority within the prison system without substantiating claims against them. See Colon, 58 F.3d at 874 ("The bare fact that [the defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain Colon's claim.").

Dkt. No. 7 at 12.

After reading the Amended Complaint, it is clear that McRae has not cured the defects identified in the July Report-Recommendation and Order and as adopted by this Court in the August Order.  Dkt. Nos. 7, 8.  Plaintiff did not attach any correspondence to the Amended Complaint.  Accordingly, for the reasons previously stated in the July Report-Recommendation and Order, it is recommended that McRae's claims against Fischer, Stallone, and Annucci be dismissed.  See Tafari v. McCarthy, 714 F. Supp.2d 317, 339 (N.D.N.Y. 2010) (explaining that even where the plaintiff is pro se, "an opportunity to amend is not required where the plaintiff has already amended the complaint [or] . . . where the problem with the plaintiff's causes of action is substantive such that better pleading will not

---

[10]   These unpublished decision will not be provided to plaintiff, as the Court provided plaintiff copies of this unpublished decision at the time it issued its Report-Recommendation and Order.  Dkt. No. 7.

cure it.") (internal punctuation marks and quotations omitted).[11]

## D.  Conspiracy

McRae claims that Fischer, Annucci, and Stallone conspired to deprive him of his constitutional rights.  See Am. Compl. at 4; Dkt. No. 14 at 1-2.  In order to support a claim for conspiracy pursuant to §§ 1983 or 1985, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002).  An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient.  See Iqbal v. Hasty, 490 F.3d 143,177 (2d Cir. 2007), reversed and remanded on other grounds by Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999).  Although exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action."  Anilao v. Spota, 774 F.Supp. 2d 457, 512-13 (E.D.N.Y. 2011) (citations omitted).  Conclusory, vague, and general allegations are insufficient to support a conspiracy claim.  See Ciambriello, 292 F.3d at 325.

Here, McRae failed to plead a viable conspiracy claim against any of the defendants. The Amended Complaint lacks facts suggesting that defendants had any type of agreement

---

[11]     The Court notes that McRae cites various statutory provisions in an attempt to show that some prison conditions violated DOCCS directives.  See Am. Compl. at 4. However, it is well-settled in this District that "[a] violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983."  Burns v. Martuscello, No. 9:13-CV-0486 (LEK/CFH), 2015 WL 541293, at *13 (N.D.N.Y. Feb. 10, 2015) (quoting Cusamano v. Sobek, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009)).  Thus, McRae fails to state a claim insofar as he claims that his constitutional rights were violated by Defendants' failure to follow DOCCS policy.

between them.  There are no allegations outlining with specificity when, why, or how an

alleged conspiracy occurred or the existence of an explicit or implicit agreement between

any or all of the defendants.  Even though exacting specifics are unnecessary at the

pleading stage, McRae, in opposition to the Motion to Dismiss, fails to provide any plausible

information which would lend credence to his claims of an explicit or implicit agreement

between any or all of the defendants.  See Anilao, 774 F.Supp.2d at 512-13.  McRae fails to

plead either: "(1) a meeting of the minds between any of the defendants to act in concert to

inflict a constitutional injury on McRae; or (2) the commission of any overt act in furtherance

of that goal."  See Cusamano v. Sobek, 604 F.Supp.2d 416, 432 (N.D.N.Y. 2009).

Accordingly, it is recommended that McRae's conspiracy claim be dismissed.


### E.  State Law Claims

McRae claims that Defendants violated the New York State Constitution, Articles I and

5; New York Corrections Law § 137(5); 7 NYCRR §§ 301 - 301.7, 701.8, 701.9; and

DOCCS Directives 4040, 4910, 4913, 4932, and 4933.[12]  See Am. Compl. at 3-4; Dkt. No.

14 at 3.

The undersigned would still recommend dismissal of McRae's state law claims in light

of the recommendations of dismissal of all federal causes of action in McRae's Amended

Complaint.  See 28 U.S.C. § 1367(c)(3) (stating that the district court may decline to

exercise supplemental jurisdiction over a claim if all other claims over which the court has

original jurisdiction have been dismissed); City of Chicago v. Int'l College of Surgeons, 522

---

[12]  Further, as noted in footnote 11, supra, violations of DOCCS directives do not amount to a constitutional claim.

14

U.S. 156, 172 (1997); Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994).

Even if the underlying federal causes of action survived, New York Correction Law §

24(1) controls.  The section provides:

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

See Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996).

Courts look at the following factors to determine whether a defendant's action is within

the scope of employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in the actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could have reasonably anticipated.

Ierardi v. Sisco, 119 F.3d 183, 187 (2d Cir. 1997) (quotations and citations omitted) (holding

that the defendant's alleged sexual harassment was not undertaken in the discharge of his

duties and beyond the protection afforded to officers under § 24).

The test to determine whether the defendants' actions fall within the scope of their

employment is "whether the act was done while the servant was doing his master's work no

matter how irregularly, or with what disregard of the instructions."  Cruz v. New York, 24 F.

Supp.3d 299, 309 (W.D.N.Y. 2014) (citing Cepeda v. Coughlin, 128 A.D.2d 995, 996 (N.Y.

App. Div.1987)).  Conduct that is "purely for personal reasons unrelated to the employer's

interests, . . . which is a substantial departure from the normal methods of performing the officer's duties is not considered within the scope of employment." Johnson v. New York State Dep't of Corr. Servs. & Cmty. Supervision, No. 11-CV-079S, 2013 WL 5347468 (W.D.N.Y. Sept. 23, 2013) (quoting Gore v. Kuhlman, 217 A.D.2d 890, 891 (N.Y. App. Div. 1995)).

McRae claims that Defendants were on duty in the correctional facility at the time of the alleged constitutional violations.  Defendants' alleged acts were not significant departures beyond the scope of their employment.  Accordingly, the undersigned recommends dismissal of McRae's state law claims.[13]

## F. Leave to Amend

Ordinarily, a court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991) (citing inter alia FED. R. CIV. P. 15(a)).  Here, McRae has not asked for permission to file a Second Amended Complaint, "nor otherwise indicated that he is in possession of facts that could cure the deficiencies identified in the Memorandum-Decision and Order." See Vassenelli v. State Univ. of New York, No. 5:17-CV-00082 (MAD/ATB), 2018 WL 1406629, at *5 (N.D.N.Y. Mar. 19, 2018).  Since McRae has already been afforded an opportunity to amend the complaint, and did file an amended complaint, he

---

[13]     In the alternative, Defendants move for limited discovery in order to determine whether McRae exhausted his administrative remedies under the PLRA. Dkt. No. 10-1 at 17-18. As the undersigned is recommending dismissal of the action, the undersigned declines to address this request.

need not be afforded another opportunity to amend prior to dismissal.  See Smith v.

Fischer, No. 07-CV-1264 (DNH/GHL), 2009 WL 632890, at *5, n.20 (N.D.N.Y. Feb. 2, 2009)

(citations omitted).

### III.  Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**ORDERED**, that the Clerk of the Court shall amend the docket report to replace

Counselor Doe with "Tier Assistant Doe"; it is further

**RECOMMENDED**, that Defendants' motion to dismiss (Dkt. No. 10) be **GRANTED**, and

that plaintiff's amended complaint be dismissed with prejudice; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the

parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have fourteen

days within which to file written objections to the foregoing report. Such objections shall

be filed with the Clerk of the Court**.  FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette,

984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services,

892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED**.

Dated: June 6, 2018
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge